# In the United States Court of Federal Claims

No. 20-1116 C
Filed: April 13, 2021
Re-issued: April 23, 2021[1]

|  |  |
|---|---|
| IAP WORLD SERVICES, INC., | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| *Defendant*, | ) |
| | ) |
| and | ) |
| | ) |
| VECTRUS-J&J FACILITIES SUPPORT, LLC, | ) |
| | ) |
| *Defendant-Intervenor*. | ) |

*Anuj Vohra*, Crowell & Moring LLP, Washington, D.C., for Plaintiff. *Abigail Stokes*, *Robert Sneckenberg*, and *Alexandra Barbee-Garrett*, of counsel.

*Galina I. Fomenkova*, Trial Attorney, United States Department of Justice, Civil Division, Washington, D.C., with whom were *Brian M. Boynton*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Steven J. Gillingham*, Assistant Director, of counsel, for the Defendant. *Sandra C. Simmons*, *Nicolle A. Vasquez*, and *Seth M. Eddy*, United States Department of the Navy, Office of the General Counsel, NAVFAC Atlantic, of counsel.

*Adam K. Lasky*, Seyfarth Shaw LLP, Seattle, WA, for Defendant-Intervenor. *Bret C. Marfut*, *Steven J. Kmieciak*, and *Sara M. Rogers*, of counsel.

## OPINION AND ORDER

**MEYERS, Judge.**

Following the Court's remand to the Navy to conduct and document its unbalanced pricing analysis, the sole issue remaining before the Court is whether the Navy's conclusion that

---

[1] Initially filed under seal, this re-issued opinion incorporates a minor typographical correction and the Parties' agreed upon redactions, as indicated by bracketed ellipses ("[ … ]") below.

there is no unbalanced pricing in any of the proposals under consideration is rational. Because the Navy's unbalanced pricing analysis was rational and complied with the requirements of the Federal Acquisition Regulation ("FAR"), Plaintiff cannot prevail on the merits of its case. Therefore, Plaintiff's Motion for Judgment on the Administrative Record is DENIED. The Government's and Defendant-Intervenor's Cross-Motions for Judgment on the Administrative Record are GRANTED.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Because the facts of this matter are presented at length in the Court's prior decision, *see IAP World Servs., Inc. v. United States*, No. 20-1116 C, --- Fed. Cl. ---, 2021 WL 451002 (Jan. 21, 2021) (ECF No. 56) (reissued publicly with limited redactions Feb. 8, 2021 (ECF No. 60)), they are not repeated here. As relevant to this opinion, on January 21, 2021, the Court denied-in-part and granted-in-part Plaintiff IAP World Services, Inc.'s ("IAP") Motion for Judgment on the Administrative Record (ECF No. 35). *See id.* At the same time, the Court granted-in-part the United States' ("Government") and Defendant-Intervenor Vectrus-J&J Facilities Support, LLC's ("VJFS") Cross-Motions for Judgment on the Administrative Record as to most of IAP's Complaint but remanded the case to the Navy so that it could conduct and document a mandatory unbalanced pricing analysis. *Id.*, 2021 WL 451002, at *23. Based on these holdings, the Court granted judgment to the Government and VJFS on Counts I-IV of IAP's Complaint, but deferred entering judgment on Count V, which addressed the Navy's best value tradeoff, pending the remand because the unbalanced pricing analysis stood to change the Navy's tradeoff analysis.

On February 9, 2021, the Government informed the Court that the Navy had completed its unbalanced pricing analysis and "determined that no unbalanced pricing existed in any of the proposals under consideration." ECF No. 61 at 1. On February 19, 2021, the Government filed its Post-Remand Amended Administrative Record ("Record" or "AR"), ECF Nos. 66 and 66-1, consisting of the Navy's revised decisional documents that were amended to include its unbalanced pricing analysis. *See generally* AR Tabs 98-102.

In reaching its conclusion that no unbalanced pricing existed in any of the proposals, the Navy first considered where the greatest risk of unbalanced pricing in proposals would be based on the fixed-price nature of the contract and determined the most likely risk to be offerors front-loading their proposals. AR Tab 98 at 15082-86. To analyze this, the Navy compared each offeror's prices offered for work in the base period to the offeror's price for the option years. *Id.* at 15083. While there were differences that drew its attention, the Navy recognized that these differences were explained by the Request for Proposal ("RFP"). Specifically, the RFP allowed offerors to include transition costs into the base period price, which resulted in higher prices for VJFS in its base period as compared to its option periods. *Id.* at 15085. The Navy also compared offerors to each other for every performance period and examined each balance of prices between Recurring Work and Non-Recurring Work. *Id.* The Navy concluded that none of the offers were unbalanced because the offerors did not over or understate their Recurring Work or Non-Recurring Work pricing. *Id.*

On February 23, 2021, IAP filed its Supplemental Brief Regarding Unbalanced Pricing ("Pltf.'s Suppl. Br."). ECF No. 67. On March 9, 2021, the Government filed its Response to

Plaintiff's Supplemental Brief Regarding Unbalanced Pricing ("Def.'s Suppl. Resp."), ECF No. 68, and VJFS filed its Response to Plaintiff's Supplemental Brief Regarding Unbalanced Pricing ("Int.'s Suppl. Resp."), ECF No. 69.  An extensive oral argument was heard on March 12, 2021, and the remaining issue concerning unbalanced pricing is ripe for review.

## II.    DISCUSSION

The question for the Court is whether the Navy's analysis is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial."  *Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013) (citing 28 U.S.C. § 1491(b)(4)'s adoption of the standard of 5 U.S.C. § 706).  In other words, the Court's role here is not to test whether there is a better, faster, or otherwise "more correct" way to analyze unbalanced pricing; rather, it is the Court's task to determine whether the Navy's unbalanced pricing analysis is reasonable and its conclusions rational.  "If the [C]ourt finds a reasonable basis for [an] agency's action, the [C]ourt should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations."  *Perspecta Enter. Sols. LLC v. United States*, 151 Fed. Cl. 772, 780 (2020) (quoting *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989)) (alterations in original).

### A.    The Navy reasonably considered the risks of unbalanced pricing and tailored its analysis appropriately.

Under the FAR, "[a]ll offers with separately priced line items or subline items shall be analyzed to determine if the prices are unbalanced."  48 C.F.R. § 15.404-1(g)(2).  The FAR provides that "[u]nbalanced pricing exists when, despite an acceptable total evaluated price, the price of one or more line items is significantly over or understated as indicated by the application of cost or price analysis techniques."  *Id.* § 15.404-1(g)(1); *see also Survival Sys., USA, Inc. v. United States*, 102 Fed. Cl. 255, 271 (2011) (finding that the FAR "expressly contemplates the evaluation of unbalanced pricing 'by the application of cost or price analysis techniques.'") (quoting 48 C.F.R. § 15.404-1(g)(1)).

To begin its analysis, the Navy looked at two aspects of the procurement to identify where the greatest risk of unbalanced pricing would be.  First, the Navy considered the structure of its solicitation.  In the prior opinion, the Court pointed to an apparent distinction the Navy itself made between the Recurring Work and Non-Recurring Work Contract Line Item Numbers ("CLINs"); the Navy described the Recurring Work as "fixed-price" and the Non-Recurring Work as "operat[ing] in an [Indefinite Delivery, Indefinite Quantity ("IDIQ")] manner, with orders being placed at established rates for certain work items on an as-needed basis."  *IAP*, 2021 WL 451002, at *17-18 (quoting AR Tab 80 at 13542).  In response to this portion of the prior decision, the Navy first clarified that "this is a fixed-price procurement in all respects."  AR Tab 98 at 15083.  As the Navy explained, because the Non-Recurring Work has a not-to-exceed amount for each ordering period, it too operates as a fixed-price contract.  *Id.*  The Navy also assessed unbalanced pricing at the CLIN-level because the respective ELIN "variances are already captured through the use of the estimated quantities and fixed-price nature of the Non-Recurring Work."  *Id.*  Plaintiff does not challenge either determination.

3

Second, the Navy considered the specific work that may be performed (if ordered) under the Non-Recurring Work CLINs to evaluate any respective risk of unbalanced pricing. Here, the Navy concluded that:

> In order to engage in any sort of gamesmanship within Non-Recurring Work items (i.e., structure an offer in a manner in which [the offeror] is able to reap the benefit of a lower overall price during the evaluation stage, while primarily receiving orders of its "overpriced" items, rather than its "underpriced" items, during administration), an offeror would need to be able to anticipate which work items the Government will require, and which it will not, across each period of performance. Such foresight is difficult to realistically envision, as the Government's needs will be determined by events that have not yet occurred (e.g., when certain systems fail, when Acts of God occur, changes in law/regulation/policy, etc.).

AR Tab 98 at 15083. This conclusion is reasonable given the nature of the work that comprises the Non-Recurring Work. For example, the Non-Recurring Work includes prices to "provide all labor, materials and equipment required to repair and test failed 1 Inch backflow preventer . . . ." AR Tab 97 at 14872. Similarly, if the failed equipment cannot be repaired, there is pricing to "provide all labor, materials and equipment required to replace and test failed 1 Inch backflow preventer, after repair attempt . . . ." *Id*. at 14874. Predicting when or if such equipment will fail would appear unlikely. There are similar line items for numerous different types of equipment that may or may not fail during any option period. Other work includes pricing for painting that may or may not be ordered, services for special events, and replacement of underground water pipes. *See generally id*. at 14869-88. The common trait among these work items is that they are unpredictable in any meaningful way.

Based on its analysis of its procurement, the Navy determined that the risks of unbalanced pricing would be (1) front-loading of proposals and (2) overallocation to the Recurring (*i.e.*, guaranteed) Work and under allocation to the Non-Recurring (*i.e.*, not guaranteed) Work. AR Tab 98 at 15083. In the Navy's terms, its analysis "focuses on ensuring each offer's pricing is reasonably balanced across the base and all option periods, as well as between Recurring and Non-Recurring Work CLINs." *Id*. Therefore, the Navy performed several calculations to determine whether these types of unbalance were present in any of the proposals. Because IAP challenges both conclusions on slightly different grounds, each will be addressed in turn.

    1. <u>The Navy's analysis regarding the risk of front-loading proposals was rational.</u>

To analyze front-loading, the Navy calculated: (i) the difference between the base and last option Recurring Work CLINs; (ii) the difference between the base and last option Non-Recurring Work CLINs; (iii) the annual variances between the Recurring Work CLINs; and (iv) the annual variances between the Non-Recurring Work CLINs. AR Tab 98 at 15083-84 &

15088. This analysis caused some pause for the Navy regarding VJFS's proposal because its Recurring Work CLIN price decreased [ … ]% from the base to the first option period and decreased [ … ]% from the base to last option period. *Id*. at 15084-85. While these differences "appear significant," the Navy concluded that they were explained by the fact that the RFP specifically allowed offerors to include all phase-in and phase-out costs in the base period Recurring Work CLIN. *Id*. The Navy concluded that none of the proposals was unbalanced based on front-loading.

IAP challenges the Navy's analysis comparing the base period and option periods because, according to IAP, "[n]either the FAR nor precedent supports the Navy's assertion that unbalanced pricing may be assessed by looking only *within* a given proposal." Pltf.'s Suppl. Br. at 6 (emphasis in original). The Navy appears to have brought this dispute on itself when it stated that "[b]y the terms of the FAR, this [unbalanced pricing] analysis is conducted *within* each offer, rather than by a comparison of separate offers. . . . Comparison of offers to one another and to the [Independent Government Estimate ("IGE")] was performed in the context of determining price reasonableness and competitiveness . . . ." AR Tab 98 at 15082-83 (emphasis in original). Both IAP's and the Navy's assertions are wrong.

The Navy does not explain what in the FAR it believes compels the unbalanced pricing analysis to be limited to looking within a proposal and there is no basis for this blanket conclusion in the Court's precedent. Indeed, in many cases the Government has identified unbalanced pricing by comparing offerors' proposals to each other and/or an independent government estimate. *E.g., Green Tech. Grp., LLC v. United States*, 147 Fed. Cl. 231, 241 (2020) (CLINs compared against the Independent Government Cost Estimate (IGCE)); *Harmonia Holdings Grp., LLC v. United States*, 136 Fed. Cl. 298, 308 (2018) (same); *XPO Logistics Worldwide Gov't Servs., LLC v. United States*, 133 Fed. Cl. 162, 182 (2017), *aff'd*, 713 F. App'x 1009 (Fed. Cir. 2018) (unit prices and subline item (SLIN) prices compared between three offerors and unit price comparisons used "to create a standard deviation against which each price could be measured and assessed"); *Acad. Facilities Mgmt. v. United States*, 87 Fed. Cl. 441, 454 (2009) (line item and subline item prices compared against the IGCE). But none of these cases *require* the use of any technique to analyze for unbalanced pricing and the question for the Court is not whether the FAR mandated the Navy perform the analysis that it did, but whether the Navy's analysis was rational and permissible under the FAR. *See Perspecta*, 151 Fed. Cl. at 784 (quoting *Tyler Constr. Grp. v. United States*, 570 F.3d 1329, 1333 (Fed. Cir. 2009)) ("[W]hen assessing the agency's selected evaluation procedures, the 'proper inquiry' is 'whether there is any statutory or regulatory provision that **precludes** such use.'") (alteration in original). It was.

IAP's assertion that there is no precedent supporting an unbalanced pricing analysis of base versus option periods—*i.e.*, "within a proposal"—is incorrect. In at least two cases, this Court has specifically endorsed the analysis the Navy performed here. In *Munilla Construction Management, LLC v. United States*, 130 Fed. Cl. 635 (2017), the Court recognized that "[i]n option-period solicitations, the unbalanced bid offers relatively high prices for the base period and relatively low prices for the later option periods." *Id*. at 650 (quoting Daniel I. Gordon, *Unbalanced Bids*, 24 Pub. Cont. L.J. 1, 2 (1994)). Thus, the *Munilla* Court concluded that "[a]n

unbalanced offer in this context is one that proposes relatively high prices for the base period but relatively low prices for the later option periods . . . ." *Id*. (citing Gordon, 24 Pub. Cont. L.J. at 3-5 and Ralph C. Nash & John Cibinic, *Unbalanced Bids and Proposals: Trying to Beat the System*, 5 No. 4 Nash & Cibinic Rep. ¶ 21 (1991)). In fact, the *Munilla* Court expressly approved an unbalanced pricing analysis that consisted of comparing the prices of the base period and each option period. *Id*. at 651. Similarly, in *Survival Systems, USA, Inc. v. United States*, 102 Fed. Cl. 255 (2011), the Court found that the Government's unbalanced pricing analysis for a fixed-price contract was reasonable when the Government compared offerors' mobilization and base year prices to their option year services. *Id*. at 271-72.

Nor does the FAR require that the Navy do more than it did here. IAP's argument here is that the FAR requires the Navy to compare offers to each other, not just prices within each offer. *See* Pltf.'s Suppl. Br. at 3, 6. The Government and VJFS, however, argue that the FAR places no such requirement on the Navy because the FAR does not specify what techniques must be used to analyze proposals for unbalanced pricing. The language of the FAR itself resolves this dispute. The FAR provides that "[i]f *cost or price analysis techniques* indicate that an offer is unbalanced, the contracting officer shall . . . ." 48 C.F.R. § 15.404-1(g)(2) (emphasis added). The FAR defines price analysis to be "the process of examining and evaluating a proposed price without evaluating its separate cost elements and proposed profit." *Id*. § 15.404-1(b)(1). The Navy's approach certainly qualifies as a "price analysis" under this definition.

The FAR also includes exemplars of price analysis techniques. 48 C.F.R. § 15.404-1(b)(2). According to Plaintiff, because "[n]early all the FAR's identified . . . price analysis techniques involve comparisons of an offeror's proposed prices to information *outside* of the offeror's proposal," the Navy had to do so as well. Pltf.'s Suppl. Br. at 7 (emphasis in original). Plaintiff's argument fails for several reasons. First, as a matter of logic, if "nearly all" of the FAR's price analysis techniques involve comparing one offer to another, there necessarily are other techniques that do not, which undermines Plaintiff's argument here. Second, the FAR provides a non-exhaustive list of exemplar price analysis techniques, none of which is mandatory. On this point, the FAR could not be any clearer: "The Government may use various price analysis techniques and procedures to ensure a fair and reasonable price. *Examples of such techniques include, but are not limited to, the following* . . . ." 48 C.F.R. § 15.404-1(b)(2) (emphasis added). There is nothing in the FAR that requires the Navy to conduct an analysis of each offeror's CLIN pricing for Recurring and Non-Recurring Work in each ordering period.

Finally, as explained in more detail in the next section, the Navy did compare each proposal's allocation of price between Recurring and Non-Recurring Work CLINs to the IGE for each ordering period. Therefore, as a factual matter, the Navy's analysis did not look exclusively within each proposal.

      2.    The Navy's analysis of the balance between Recurring and Non-Recurring Work was rational.

To assess the second identified risk of unbalanced pricing—the allocation between Recurring and Non-Recurring Work—the Navy examined the allocation of price for each ordering period. To do this, the Navy calculated the percentage of the total price (the sum of

Recurring and Non-Recurring CLINs) allocated to the Recurring and Non-Recurring CLINs for each ordering period.  AR Tab 98 at 15085.  While both IAP and VJFS allocated a [ … ] percentage of price to the Non-Recurring Work than the IGE anticipated, the Navy determined that the difference was minor and did not indicate any unbalance.  *Id*.  The Navy also considered whether the ratio between Recurring and Non-Recurring CLINs changed significantly in any proposal and found the proposals to be consistent from one period to the next.[2]

IAP argues that the Navy's analysis was insufficient because "at no point did the Navy compare the offerors' *actual* CLIN *prices* against one another or the [IGE], or recognize that [VJFS] had simultaneously proposed the *lowest* Recurring Work prices yet the *highest* Non-Recurring Work prices."  Pltf.'s Suppl. Br. at 6 (emphasis in original).[3]  To the extent IAP argues that the Navy's decision to compare proposals to the IGE using ratios rather than actual dollar amounts is improper, that argument fails to find support in this Court's precedent.  *See, e.g., Al Ghanim Combined Grp. Co. Gen. Trad. & Cont. W.L.L. v. United States*, 56 Fed. Cl. 502, 515-16 (2003) ("Although plaintiff and defendant focus much of their arguments regarding pricing on whether [awardee's] proposal evidenced unbalanced pricing, the court declines to speculate on what the analysis would have revealed.  *The omission is a price analysis; the court finds that the Corps did not evaluate the ratio between the CLINs*.") (emphasis added); *Ultimate Concrete, LLC v. United States*, 127 Fed. Cl. 77, 83 (2016) (finding unbalanced pricing when evaluating percentages (*i.e.*, ratios) for the awardee's original bid, in which a CLIN accounted for approximately two percent of the contract's overall value based on the IGE and for "42.6% of the overall value" in the awardee's bid).  There is nothing in the FAR that mandates a comparison of raw dollar values as opposed to comparing ratios so long as those ratios target the potential for unbalanced pricing.  Indeed, IAP itself argues at length about the percentage differences between its proposal and VJFS's.  *E.g.*, Pltf.'s Suppl. Br. at 3 ("That [ … ]% difference was [ … ] the 9.24% difference between IAP's and [VJFS's] total evaluated prices, which the Navy itself considered to be a 'large range.'") (emphasis in original).

---

[2] The one exception was that VJFS allocated a greater percentage to the Recurring Work CLIN for the base period as compared to the option periods.  As explained above, this was because VJFS permissibly included all its phase-in and phase-out costs in that CLIN.  *See also* AR Tab 98 at 15085.

[3] The scheme IAP argues is counterintuitive because it asserts that VJFS is underbidding the work most likely to be awarded and overbidding the work that is least likely to be awarded.  This is the opposite of the typical unbalanced pricing scheme in which the offeror overbids the most likely work and underbids the less likely work with the hope that the less likely work is never ordered, which generates a windfall for the offeror.  *C.f. Moffett, Hodgkins & Clarke Co. v. City of Rochester*, 178 U.S. 373, 381-82 (1900) (recognizing "an unbalanced bid" as one "in which the contractor will give a low price for one kind of work or materials in the same contract with the hope that the quantity of work and materials for which a low price is bid will be reduced, while the quality of materials or work for which a high price is bid will be increased, thus making up on the high price bid sufficient to give the contractor a large profit upon the whole work.") (internal quotation marks omitted).

Nor was the Navy required to perform the calculations that IAP puts forth in its supplemental brief.  As noted above, the Navy compared each proposal's pricing for Recurring and Non-Recurring Work to the IGE for each ordering period.  *See* AR Tab 98 at 15085.  This type of analysis is, in fact, one of the exemplar price analysis techniques included in the FAR. 48 C.F.R. § 15.404-1(b)(2)(v).  While the Navy recognized that both VJFS and IAP allocated more of the total price in each ordering period to the Non-Recurring Work than the IGE anticipated, it determined that the variance was "minor and not significant enough" to show a lack of balance.  AR Tab 98 at 15085.  There is nothing irrational about that conclusion.  IAP, however, argues that the Navy should have compared prices by comparing VJFS's prices (in dollars) to the average of the non-VJFS prices.  Pltf.'s Suppl. Br. at 4.[4]  Here too, such an analysis was permitted by the FAR, but not required.  Because this analysis was not required, the Navy's choice to compare proposals to the IGE rather than to each other was not arbitrary or capricious.

**B.      The Navy was not required to consider performance risk in the first step of the unbalanced pricing analysis.**

IAP appears to argue that within the first step of the unbalanced pricing analysis, addressing whether unbalanced pricing exists, the Navy should preemptively evaluate performance risk and unreasonably high prices.  *See* Pltf.'s Suppl. Br. at 5, 8-10.  But under 48 C.F.R. § 15.404-1(g)(2), there is a two-step analysis: "All offers with separately priced line items or subline items shall be analyzed to determine if the prices are unbalanced.  *If cost or price analysis techniques indicate that an offer is unbalanced, the contracting officer shall* – (i) Consider the risks to the Government associated with the unbalanced pricing . . . ." (emphasis added).  Here, because the Navy rationally determined that there was no unbalanced pricing, there was no basis to get to the second step of the analysis and consider the risks to the Government.

IAP's reliance on both *Green Technology Group, LLC v. United States*, 147 Fed. Cl. 231 (2020) and *Harmonia Holdings Group, LLC v. United States*, 136 Fed. Cl. 298 (2018), is misplaced.  *See* Pltf.'s Suppl. Br. at 9.  Neither case provides support for IAP's position because they are premised upon the existence of unbalanced pricing, which triggers the second step of the FAR analysis.  *Green Tech.*, 147 Fed. Cl. at 241 (noting that the agency "admitted" to

---

[4] It is not clear that this analysis would have identified any proposal as "significantly" over or understating prices, as required by the FAR.  *See* 48 C.F.R. § 15.404-1(g)(1).  IAP's chosen methodology does show that VJFS's prices for Recurring Work were lower than the non-VJFS average prices and VJFS's prices for Non-Recurring Work were higher than the non-VJFS average prices.  That said, if the same analysis is done on IAP's proposal, it shows the same thing—that IAP's prices for Recurring Work were lower than the non-IAP average prices and IAP's prices for Non-Recurring Work were higher than the non-IAP average prices.  *See* Def.'s Suppl. Resp. at 18.  This does not mean that these proposals are unbalanced and does not undermine the Navy's conclusion that the variances from VJFS's and IAP's allocation of cost to the Non-Recurring Work from what the IGE anticipated were not significant enough to find their proposals unbalanced.  AR Tab 98 at 15085-86.

unbalanced pricing when comparing two offers); *Harmonia Holdings*, 136 Fed. Cl. at 308 (observing that the protester "concede[d]" to unbalanced pricing). Here, the second step of the unbalanced pricing analysis was not triggered because no unbalanced pricing was identified, meaning that there was no basis for the Navy to conduct the risk analyses that IAP calls for.

**C.    The Navy did not ignore an important aspect of the problem.**

IAP's final argument is that the Navy's analysis was arbitrary and capricious because it "entirely failed to consider an important aspect of the problem . . . ." Pltf.'s Suppl. Br. at 10 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). According to IAP, "it is highly curious" that the Navy did not address the concerns that IAP raised regarding VJFS's CLIN pricing in its prior briefing. *Id.* This argument is without merit. The Navy was not required to conduct the analysis IAP proposes. But the Navy did address the concern that IAP raised, albeit indirectly, when it determined that this procurement is fixed-price in all respects. As explained above, that conclusion, which IAP does not challenge, has been held to obviate the need for an analysis of unbalanced pricing within a given option period. In other words, the Navy did not ignore IAP's concerns about CLIN pricing; it found the premise underlying them flawed.

And the Navy did consider the specific concerns that the *Court* raised in the prior opinion—*i.e.*, the potential unbalanced pricing risk that the structure of the Non-Recurring Work as an IDIQ (*i.e.*, a requirements contract) could pose. Specifically, the Court was concerned that "within each period of performance, there could certainly be a risk associated with unbalanced pricing—*i.e.*, some tasks being overpriced while others are underpriced. Neither the Record nor the Government in this litigation explain why there was no consideration of unbalanced pricing within the Non-Recurring Work within each period of performance." *IAP*, 2021 WL 451002, at *18. During remand, the Navy addressed this issue and explained that the fixed-price nature of the procurement, coupled with the highly unpredictable nature of the Non-Recurring Work, mitigates this risk. *See supra* Sec. II.A. Because Plaintiff neither challenges the Navy's conclusion nor points to any alleged unbalanced pricing "within the Non-Recurring Work" in any performance period, the Court sees no need to question the Navy's explanation here.

**III.    CONCLUSION**

In the prior decision, the Court granted Judgment on the Administrative Record for some, but not all, of the counts contained in the Complaint. Because the Court did not "expressly determine[] that there [was] no just reason for delay," Rule of the Court of Federal Claims 54(b), final judgments were not entered with regard to Counts I-IV. For the reasons stated above, the Court grants Judgment on the Administrative Record to the Government and VJFS with regard to Count V, which means that the Court has now granted judgment as to the entire Complaint. Therefore:

1) Plaintiff's Motion for Judgment on the Administrative Record is **DENIED**.

2) The Government and Defendant-Intervenor's Cross-Motions for Judgment on the Administrative Record are **GRANTED**.

3)  The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

<u>s/ Edward H. Meyers</u>
Edward H. Meyers
Judge